**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 18-1661**

---

PHILLIP B. FAULCONER,

Plaintiff – Appellant,

v.

CENTRA HEALTH, INC.,

Defendant – Appellee.

---

Appeal from the United States District Court for the Western District of Virginia, at Lynchburg. Norman K. Moon, Senior District Judge. (6:17-cv-00023-NKM-RSB)

---

Argued: December 11, 2019 Decided: April 7, 2020

---

Before KING, HARRIS, and RUSHING, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Harris wrote the opinion, in which Judge King and Judge Rushing joined.

---

**ARGUED:** Terry Neill Grimes, TERRY N. GRIMES, ESQ., PC, Roanoke, Virginia, for Appellant. Joshua Richard Treece, WOODS ROGERS, P.L.C., Roanoke, Virginia, for Appellee. **ON BRIEF:** Brittany Michelle Haddox, GRIMES & HADDOX, P.C., Roanoke, Virginia, for Appellant. Frank K. Friedman, Victor O. Cardwell, WOODS ROGERS, P.L.C., Roanoke, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Phillip Faulconer sued his former employer, Centra Health, under Title VII of the Civil Rights Act of 1964, alleging that he was fired in retaliation for filing a charge of age discrimination with the Equal Employment Opportunity Commission. The district court granted summary judgment to Centra, holding that Title VII does not forbid retaliation for making age discrimination claims, which are covered instead by a separate statute, the Age Discrimination in Employment Act. We agree with the district court and affirm its judgment in all respects.

## I.

In July of 2016, Phillip Faulconer filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against his then-employer, Centra Health. In that charge – which we will refer to as the "July Charge" – Faulconer, who worked in various departments at a hospital, described an incident in the blood bank in which he was disciplined for failing to provide blood for patients when requested and for clerical errors. But Faulconer believed, as he told the EEOC, that he actually had been "disciplined and retaliated against because of [his] age (62), in violation of the Age Discrimination in Employment Act [("ADEA")]." J.A. 97. The EEOC dismissed Faulconer's age discrimination charge and issued a right-to-sue letter. Faulconer did not file suit within the prescribed 90-day period.

In October of 2016, Centra terminated Faulconer for behavior it deemed "threatening, intimidating, and disruptive" that occurred over multiple episodes in a single

day. *Faulconer v. Centra Health, Inc.*, 2018 WL 2187447, at *2 (W.D. Va. May 11, 2018). According to Centra, Faulconer, who was displeased with repeated assignments to the same medical department, aggressively confronted the schedule-maker and then followed her into a manager's office, where he continued to intimidate her. Then, during a follow-up meeting with the manager and a human resources ("HR") officer, Faulconer invaded the manager's personal space despite requests to stop. After consulting with Centra HR executives, the manager and HR officer decided to fire Faulconer.

Faulconer saw things differently, and in December of 2016, he filed the EEOC charge – the "December Charge" – that would become the basis for this lawsuit. According to Faulconer's December Charge, it was the manager, not Faulconer, who had acted in a threatening manner. Faulconer was fired, he claimed, not for inappropriate behavior, but in retaliation for having filed his July Charge with the EEOC. Faulconer again alleged age discrimination under the ADEA and, this time, referred as well to sex discrimination under Title VII without providing any supporting information. The EEOC again dismissed Faulconer's charge and issued a right-to-sue letter.

This time, Faulconer, represented by counsel, did file suit, in March of 2017, alleging one claim: retaliation in violation of Title VII. The complaint described the blood-bank incident that led to Faulconer's July Charge, and recounted the filing of a "*pro se* [] Charge of Discrimination with the EEOC on July 26, 2016 alleging age discrimination and retaliation." J.A. 17. According to the complaint, Faulconer was terminated in retaliation for that July Charge, which constituted "protected activity" for which he could not be penalized under Title VII. J.A. 18.

On May 22, 2017, the district court entered a pretrial scheduling order under Federal Rule of Civil Procedure 16(b), which requires time limits for amending pleadings and provides that those limits "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Accordingly, the district court's scheduling order required that any motion to amend the complaint be filed within 45 days of the date of the order, "[e]xcept for good cause shown." J.A. 13. The district court later granted an unopposed motion by Faulconer to file an amended complaint that made one minor correction.

Nearly a year later, in March of 2018 – months after the 45-day period for amendments and after the close of discovery – Centra moved for summary judgment. In support, Centra argued that Faulconer's complaint suffered from a fundamental flaw: Title VII prohibits retaliation for opposing activity made unlawful by Title VII, such as race or sex discrimination, *see* 42 U.S.C. § 2000e-3(a), but does not prohibit retaliation for opposing *age discrimination*. Both age discrimination and retaliation for opposing age discrimination are, however, prohibited by a separate statute, the ADEA. *See* 29 U.S.C. § 623. Accordingly, Centra contended, an EEOC age discrimination charge – like Faulconer's July Charge – cannot be the predicate for a Title VII retaliation claim.

In response, Faulconer moved for leave to file a second amended complaint, in order to add the ADEA as a statutory basis for his retaliation claim. Faulconer sought leave to amend not under Rule 16(b), the source of the district court's scheduling order, but rather under Rule 15(a)(2), which provides that district courts should "freely give leave" to amend pleadings when "justice so requires." Fed. R. Civ. P. 15(a)(2). Faulconer acknowledged

that his complaint alleged retaliatory discharge only under Title VII, not the ADEA, but attributed that to a "scrivener's error" that could be corrected without prejudice to Centra. J.A. 323.

The district court denied the motion. "[O]nce the deadlines in a scheduling order have expired," it explained, "the Rule 15 standard" – under which leave to amend is freely given – "ceases to apply and a 'good cause' standard under Rule 16(b)(4) governs" instead. J.A. 1687. The "touchstone of good cause," the court continued, is "diligence." *Id.* And Faulconer could not meet that standard, the court concluded, given that the time to amend had expired over eight months ago; that there was no explanation for the prolonged delay; and that Centra already had moved for summary judgment, with briefing ongoing.

Faulconer had another response to the potential defect in his complaint identified by Centra: In his opposition to summary judgment, Faulconer for the first time contended that his firing was in retaliation for objecting to *sex* discrimination, which *is* covered by Title VII. Faulconer raised a new set of factual allegations to support that claim, asserting that his supervisor at Centra, Markem Smith, sexually harassed women and made sexual (and also racial) remarks in the workplace; that Faulconer had objected to *that* conduct; and that those objections were the basis for the retaliatory discharge alleged in his complaint.

The district court granted summary judgment to Centra. First, the court agreed with Centra that Faulconer's Title VII retaliation claim suffered from a fundamental defect: "Faulconer's complaint contended that he was actually terminated for making the age discrimination allegation in July. Yet . . . Title VII does not forbid retaliation for making age discrimination complaints. The ADEA does, but there is no ADEA claim in the case."

*Faulconer*, 2018 WL 2187447, at *1. The court elaborated, explaining that Title VII and the ADEA protect against discrimination based on different characteristics and have distinct anti-retaliation provisions, with "each . . . protect[ing] conduct related to its own scope, not that of the other." *Id.* at *3. As a result, Faulconer's claim – that he was retaliated against for objecting to age discrimination in his July Charge – could be cognizable under the ADEA, but not under Title VII, as alleged in his complaint.

The district court then turned to Faulconer's new claim: that he actually was fired not in retaliation for the July Charge of age discrimination, but for objecting to Smith's inappropriate workplace conduct, and especially his contact with women employees. Nothing about that claim, the district court found, was reflected in or supported by Faulconer's complaint: The "sole theory" of the complaint is retaliation "based on the July ADEA charge of discrimination," and "[n]owhere does the complaint" even "mention Smith's alleged sexual harassment" or provide any supporting factual allegations. *Id.* at *4. Moreover, the court continued, even if Faulconer's new claim were considered on the merits, it would fail because Faulconer could not show a causal connection between his alleged objections to Smith's conduct and his firing: Smith was not involved in Faulconer's discharge, and Faulconer had not directed the court to any evidence that the individuals who *were* involved had considered any complaints he had raised about Smith.

Faulconer timely appealed.

**II.**

Faulconer now challenges two of the district court's orders: the order denying his motion for leave to file a second amended complaint to add the ADEA as a basis for his retaliation claim, and the order granting summary judgment in favor of Centra. We address each in turn and affirm the district court's judgment in full.

**A.**

We review the district court's denial of Faulconer's motion for leave to amend his complaint for abuse of discretion. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). Faulconer argues that the district court erred by denying his motion to amend under Federal Rule of Civil Procedure 15(a)(2), which instructs courts to "freely" allow amendments when "justice so requires." Fed. R. Civ. P. 15(a)(2). Under that standard, Faulconer contends, he should have been allowed to add the ADEA to his complaint, because he then would have a basis for what could be a viable retaliation claim and Centra would suffer no significant prejudice as a result.

This argument is misplaced because – as the district court explained – Rule 15 and its generous standard for amendments do not govern this case. Under Rule 16 of the Federal Rules of Civil Procedure, the district court was required to enter a scheduling order "limit[ing] the time to . . . amend the pleadings." Fed. R. Civ. P. 16(b)(1), (3)(A). And once it did so, that schedule could be "modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). So when Faulconer moved to amend his complaint, more than eight months after the scheduling order's deadline, the standard that applied was not Rule 15 but rather the "good cause" requirement of Rule 16. *See Nourison Rug*, 535

F.3d at 298 ("[A]fter the deadlines provided by a scheduling order have passed, [Rule 16's] good cause standard must be satisfied to justify leave to amend the pleadings.").

As the district court further explained, the "touchstone" of that good cause requirement is "diligence." J.A. 1687. "[I]f the movant has not been diligent in meeting the scheduling order's deadlines," then other factors – including the presence or absence of prejudice to the other party – generally will not be considered. *Kmak v. Am. Century Cos., Inc.*, 873 F.3d 1030, 1034 (8th Cir. 2017) (internal quotation marks omitted). Instead, only diligent efforts to comply with the scheduling order can satisfy Rule 16's good cause standard. *Id.* If the moving party knew of the underlying conduct giving rise to a claim but simply failed to raise it in an initial complaint, then the party cannot establish good cause under Rule 16. *See Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248–49 (10th Cir. 2015).[1]

We see no abuse of discretion in the district court's determination that Faulconer cannot meet the Rule 16 good cause standard here. Indeed, Faulconer does not argue

[1] This court has held several times in unpublished opinions that a finding of good cause under Rule 16 depends on the diligence of the party seeking amendment. *See, e.g.*, *McMillan v. Cumberland Cty. Bd. of Educ.*, 734 F. App'x 836, 846 (4th Cir. 2018), as amended (Apr. 4, 2018); *Southern v. Bishoff*, 675 F. App'x 239, 249 (4th Cir. 2017); *RFT Mgmt. Co., LLC v. Powell*, 607 F. App'x 238, 242 (4th Cir. 2015); *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012). Other circuits agree. *See, e.g.*, *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002); *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294–95 (9th Cir. 2000); *Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008).

otherwise. Faulconer moved to amend his complaint to add the ADEA as a legal basis for his retaliation claim more than eight months after the scheduling order's deadline. At no point has he offered any explanation for that delay, or for why the "scrivener's error" he describes could not have been remedied earlier. Under those circumstances, Faulconer cannot show the diligence required under Rule 16's good cause standard, and the district court did not abuse its discretion in denying his motion to amend.[2]

**B.**

Faulconer next challenges the district court's grant of summary judgment in favor of Centra on his Title VII retaliation claim. "We review a district court's decision to grant summary judgment de novo, applying the same legal standards as the district court, and viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) (internal quotation marks omitted). Summary judgment is appropriate only if no material facts are disputed and the moving party is entitled to judgment as a matter of law. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Again, we affirm the district court.

The core problem with Faulconer's complaint – alleging that Centra violated Title VII when it fired him in retaliation for his July Charge of age discrimination – is the one identified by Centra and the district court: Title VII does not prohibit retaliation for complaining about *age* discrimination. Title VII prohibits employment discrimination

---

[2] We note that Faulconer's complaint was filed with the assistance of counsel. We thus have no occasion to consider the application of Rule 16's good cause standard in the context of a *pro se* complaint.

based on race, color, religion, sex, or national origin – not age – and prohibits retaliation against anyone who opposes *those* practices or makes a charge of discrimination in violation of *Title VII*. *See* 42 U.S.C. §§ 2000e-2, 2000e-3. Discrimination based on age, and retaliation for objecting to such discrimination, are governed instead by the ADEA. *See* 29 U.S.C. § 623. And as the district court explained, those two separate statutes and anti-retaliation provisions "do not cross-pollinate." *Faulconer*, 2018 WL 2187447, at *1; *see Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("Title VII and ADEA claims arise from completely distinct statutory schemes."). As a result, it is well-established that a Title VII retaliation claim may not be "based on an employer's adverse response to [] ADEA-protected conduct." *Faulconer*, 2018 WL 2187447, at *3 (citing cases); *see, e.g.*, *Lennon v. Rubin*, 166 F.3d 6, 8 (1st Cir. 1999); *Bornholdt v. Brady*, 869 F.2d 57, 62 (2d Cir. 1989).

Indeed, Faulconer does not dispute that termination in retaliation for a complaint of age discrimination is not cognizable under Title VII. Instead, he suggests that his July Charge to the EEOC – the conduct for which he allegedly was penalized – in fact was not limited to age discrimination, but also encompassed complaints of race and sex discrimination, which would qualify as protected activity under Title VII. Like the district court, we disagree. The July Charge plainly states its basis: "I believe I was disciplined and retaliated against because of my age (62), in violation of the Age Discrimination in Employment Act of 1967, as amended." J.A. 97. It does not mention Title VII or any incidents related to sex or race discrimination; instead, it describes Faulconer's removal from the blood bank and his replacement with "two younger individuals." *Id.* And were

there any doubt on this score, it would be resolved by Faulconer's own complaint, filed with the assistance of counsel, describing the July Charge at the heart of his retaliation case as a "Charge of Discrimination . . . *alleging age discrimination and retaliation*." J.A. 17 (emphasis added).

That brings us to Faulconer's final effort to avoid the mismatch between his complaint's factual allegations and its Title VII statutory basis: his new argument, raised for the first time in opposition to Centra's summary judgment motion, that it was not the July Charge, after all, that was the catalyst for his termination, but rather his objections to supervisor Smith's race and especially sex harassment in the workplace. Specifically, Faulconer alleges that he complained to Centra of Smith's race- and sex-based comments at work, and relies especially heavily on an August 2016 follow-up letter he sent the EEOC after dismissal of his July Charge, in which he focused on his ADEA claim but also "complained in passing about Markem Smith's alleged inappropriate contact with female employees." *Faulconer*, 2018 WL 2187447, at *4; *see* J.A. 102–03. According to Faulconer's new theory of his case, it was those objections – which are protected by Title VII – that actually caused Centra to fire him, and not the July Charge.

The main problem with this "newfound approach," *Faulconer*, 2018 WL 2187447, at *4, is that it bears no resemblance to the factual allegations in Faulconer's complaint. As the district court explained, "Nowhere does the complaint mention Smith's alleged sexual harassment. And nowhere does it mention an effort by [Faulconer] to report Smith's actions, either by the August [2016 EEOC] letter or some other means. Instead, the sole

theory of the complaint is a Title VII retaliation claim based on the July ADEA charge of discrimination." *Id.*

It is true, as Faulconer argues, that a plaintiff does not have to allege in his complaint every fact on which he will rely at summary judgment. *See, e.g.*, *Gottesman v. J. H. Batten, Inc.*, 286 F. Supp. 2d 604, 612 (M.D.N.C. 2003) ("Not every fact that a plaintiff will eventually base his claim on must be listed in his complaint."). But that does not mean that a plaintiff may plead one theory and one set of facts in his complaint, and then proceed to trial on an entirely different theory supported by entirely different facts. That kind of wholesale change is tantamount to a constructive amendment of a complaint, and "the district court has discretion to deny the *de facto* amendment and to refuse to consider the new factual claims." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017) (citations omitted); *see also Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946–47 (4th Cir. 2013). Indeed, allowing such a constructive amendment at summary judgment may unfairly prejudice the defendant, by depriving it of the notice it needs to conduct effective discovery. *See Harris*, 523 F. App'x at 946 ("Because a complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations, constructive amendment of the complaint at summary judgment undermines the complaint's purpose and can thus unfairly prejudice the defendant." (internal quotation marks omitted)).

Here, we agree with the district court that nothing in Faulconer's complaint, filed by counsel, even hinted at the new theory and new factual allegations Faulconer put forth in opposition to Centra's summary judgment motion. As a result, Centra had no

opportunity during discovery to gather facts targeted to this new theory. Under those circumstances, allowing Faulconer to proceed now on his new argument would amount to a constructive amendment of his complaint – months after the deadline for amendment has passed, again without explanation for the delay, and in the face of the district court's previous denial of a motion to amend. That ground alone is enough to sustain the district court's rejection of Faulconer's new theory and its award of summary judgment to Centra on Faulconer's Title VII retaliation claim.[3]

## III.

For the foregoing reasons, we affirm the district court's judgment.

*AFFIRMED*

[3] We do not intend to cast doubt on the district court's alternative basis for granting summary judgment to Centra: that even if considered on its merits, Faulconer's new argument cannot prevail because Faulconer cannot show the necessary causal link between his termination and any actions he took in opposition to supervisor Smith's workplace conduct. *See Faulconer*, 2018 WL 2187447, at *4; *see generally Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250–52 (4th Cir. 2015) (describing elements of a Title VII retaliation claim). As the district court explained, Smith was not involved in Faulconer's discharge or the three incidents that immediately preceded it, and Faulconer failed to direct the district court to any record evidence that the individuals who *did* make the decision to fire Faulconer considered his accusations against his supervisor. But for the reasons given above, we may affirm the district court's judgment without passing conclusively on this question.